IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

———————————————————————————————————————————

DYLAN HARRIS,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )          No. 21-cv-1071-TMP
                                       )
COMMISSIONER OF SOCIAL                 )
SECURITY ADMINISTRATION,               )
                                       )
        Defendant.                     )

———————————————————————————————————————————

ORDER AFFIRMING THE COMMISSIONER'S DECISION
———————————————————————————————————————————

On May 6, 2021, Dylan Harris filed a Complaint seeking judicial review of a Social Security decision.[1] (ECF No. 1.) Harris seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II disability benefits. (ECF No. 16 at 1.) For the following reasons, the decision of the Commissioner is affirmed.

## I.    BACKGROUND

On May 22, 2019, Harris protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 404-434.

———————————————————————

[1] After the parties consented to the jurisdiction of a United States magistrate judge on November 19, 2021, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 13.)

(R. 15.) The application, which alleged an onset date of June 1, 2016, was denied initially and on reconsideration. (Id.) Harris then requested a hearing, which was held before an Administrative Law Judge ("ALJ") over telephone on October 9, 2020. (Id.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Harris was not disabled. (R. 30.) At the first step, the ALJ found that Harris has not engaged in substantial gainful activity since the alleged onset date of June 1, 2016. (R. 18.) At the second step, the ALJ concluded that Harris had the following severe impairments: "degenerative disc disease; disorders of muscle, ligament and fascia; trauma- and stressor-related disorders; depressive disorders; and attention deficit/hyperactivity disorder." (R. at 18.)

At the third step, the ALJ concluded that Harris's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19.) Accordingly, the ALJ had to next determine whether Harris retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Harris] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift and/or carry 20 pounds maximum occasionally and 10 pounds frequently. He can sit 1 hour continuously and 4 hours during an 8-hour day; can stand/walk 1 hour

> continuously and 4 hours during the 8 hour work day. He
> must avoid use of the dominant right upper extremity
> overhead but can frequently reach in all other
> directions with that extremity. He must avoid ladders,
> ropes, and scaffolds; must avoid temperature extremes of
> cold and heat; must avoid vibrations with the upper and
> lower extremities, must avoid pushing and/or pulling
> with the upper and lower extremities; and must avoid
> hazards such as unprotected heights and dangerous
> machinery. He can understand, carry out and remember
> simple and detailed tasks for 2-hour periods with a
> normal level of supervision and do so for the 8-hour day
> with customary breaks. He can occasionally interact with
> peers, supervisors and the public; and can adapt to
> occasional changes in work routines.

(R. 22.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Additionally, light work includes jobs "requir[ing] a good deal of walking or standing, or [that] involve[e] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

In reaching the RFC determination, the ALJ discussed Harris's testimony and the medical evidence in the record. The ALJ summarized Harris's testimony as follows:

> The claimant testified his conditions, including pain,
> affect his ability to walk two to three minutes before
> having great difficulty. He can stand for five minutes
> at the most. The claimant stated he was told not to lift
> more than thirty to forty pounds. He can sit for no more
> than two to three minutes at one time. He can use his
> shoulders for two minutes before having pain symptoms
> radiating to his fingers. He does not perform many chores
> or other daily activities due to his symptoms. He lives
> alone mostly, but his girlfriend lives with him
> occasionally. She works at AutoZone and performs the
> claimant's household chores.

(R. 23). The ALJ concluded that "[Harris's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 23.) The ALJ then considered Harris's medical records and treatment history, concluding that "[Harris] is capable of sustaining work activity on a regular and continuing basis within the restrictions and limitations contained within the residual functional capacity assessment." (R. 28.)

The ALJ considered the findings of Dr. Donita Keown, a consultative examiner for the State agency for disability determination services ("DDS"). (Id.)

> Dr. Keown diagnosed opiate dependence with Suboxone; chronic low back pain, status post fusion; new onset of left shoulder pain with remote history of Bankart procedure; and right shoulder, stable, status post Bankart procedure. As a result of the claimant's complaints, examination findings, and diagnosis, Dr. Keown estimated the claimant could be expected to sit three to four hours, walk or stand three to four hours, occasional lifting up to 20 pounds and more frequent lifting 10 to 12 pounds.

(R. 25.)

The ALJ also considered the analysis of Dr. Samuel Chung, who Harris visited at the request of his attorney. (R. 27.) Dr. Chung found the following:

> [Harris] currently has mechanical failed back syndrome
> due to failed L5-S1 lumbar fusion, bilateral impingement
> syndrome of shoulder after surgical intervention,
> clinical anxiety, depression, and dependency of opioids
> on treatment. As such . . . the above physical and
> psychological symptoms related to his medical diagnosis
> prevent him from performing the activities of daily
> living independently at this time. . . . [Harris has] a
> sedentary RFCA for lifting and carrying; seven total
> hours of sitting (3 in an 8-hour day but for 30-mintes
> at one time), standing (2 hours in an 8-hour day for 20-
> minutes at one time), and walking (same as standing);
> lying down or reclining for the remaining hour of the 8-
> hour day; never handling/pushing/pulling/reaching
> overhead with the bilateral upper extremities;
> occasionally reaching in all other directions,
> fingering, and feeling; never using the right lower
> extremity for foot controls and occasionally using the
> left for the same; never climbing, kneeling, stooping,
> crouching, or crawling; occasionally balancing and
> stooping; having no exposure to unprotected heights,
> humidity/wetness, pulmonary irritants, and temperature
> extremes; and occasional exposure to moving mechanical
> parts, operating a vehicle, and vibrations. In addition,
> the claimant cannot ambulate without an assistive
> device, walk a reasonable pace on rough or uneven
> surfaces, use public transportation, walk a few steps at
> a reasonable pace using a single hand rail, prepare a
> meal and feed himself, or sort, handle, or use paper
> files.

(Id.) (internal citations omitted).

The ALJ also considered the reports of two State agency medical consultants: Dr. Marcus Whiteman, who reviewed Harris's medical records for the initial agency determination, and Dr. Thomas O. Thompson, who reviewed the evidence at the reconsideration level. (R. 26.) "Dr. Whiteman's initial level assessment restricted the claimant's overhead lifting to frequent

and occasional." (Id.) However, Dr. Thompson found increased limitations, stating the following:

> [T]he evidence supports a reduction to the lifting, carrying, sitting, standing, and walking at the light exertional level with further reductions to postural activities other than never climbing ladders, ropes, or scaffolds. In addition, the claimant's capacity for reaching is restricted to no overhead reaching bilaterally and frequently reaching to the front and laterally with the bilateral upper extremities. Furthermore, the claimant is to avoid concentrated exposure to extremely cold temperatures, humidity, and vibrations.

(Id.) The ALJ then examined Harris's psychological and psychiatric impairments and treatments. The ALJ reviewed the report of Dr. Dennis W. Wilson, the psychological consultative examiner. The ALJ summarized his findings as follows:

> Dr. Wilson found mild-to-moderate limitations in the "paragraph B" criteria with the exception to understanding and remembering, which he found only mild limitations. Dr. Wilson noted further that the claimant did seem to be chronically depressed and had some difficulty attending, concentrating, and focusing. However, he was able to communicate relatively well and should be able to interact with both coworkers and supervisors in a job-related situation. He also seemed able to remember and complete more than simple sequences of tasks. These factors are not seen as changing in the foreseeable future. Financially, the claimant seems able to make change, pay bills, or manage a bank account and make financial decisions. The claimant seemed impaired with respect to social activities, but was involved in conflicts with others. He seemed able to engage in activities of daily living without structure, reminders, prompting, or assistance necessitated by psychiatric or cognitive problems. His behaviors seemed appropriate though neither very effective nor very consistent.

(R. 26.) The ALJ also considered the reports of two State agency psychological consultants: Dr. Larry H. Dennis, who reviewed Harris's records for the initial agency determination, and Dr. Celine Payne-Gair, who reviewed the evidence at the reconsideration stage. (Id.) Both consultants determined that Harris had "moderate limitations in the 'paragraph B' criteria in all areas except understanding and remembering. In this area, [Harris had] mild limitations." (Id.) Dr. Dennis found the following:

> [Harris] has no severe limitations understanding and remembering. He can carry out short and simple instructions but not detailed instructions due to concentration, persistence, and pace. Claimant can attend to simple tasks for two hours over eight-hour day. Claimant will work best with a well-spaced workstation. Contact with general public should be casual. Criticism needs to be given in a non-confrontational manner. Claimant will work best with a few familiar coworkers. Changes in work setting need to be gradual and infrequent.

(Id.) Dr. Payne-Gair developed the following mental RFC assessment:

> [Harris] can understand and remember simple and detailed instructions. The claimant can complete simple tasks, maintain attention and concentration for periods of at least two hours and complete a normal workday and workweek without significant psychologically related interruptions, and perform at a consistent pace. The claimant can relate appropriately to peers, coworkers and supervisors. The claimant can adapt to routine change in the workplace.

(R. 27.)

The ALJ then looked at all of the medical evidence holistically, without "any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." (Id.) The ALJ found that Dr. Keown's opinion was persuasive except that she "did not assess limitations involving reaching and she did not provide limitations addressing the claimant's capacity for postural activities and environmental restrictions." (R. 26.) In reviewing the reports of the State agency medical consultants, the ALJ found Dr. Thompson's assessment, which showed increased limitations, to be "more consistent with the evidence as a whole [than Dr. Whiteman's] and is persuasive." (Id.) The ALJ found that Dr. Wilson's "'paragraph B' criteria to be an overestimate of the claimant's mental limitations. . . . Otherwise, Dr. Wilson's opinion is persuasive in showing the claimant has not marked or extreme mental limitations." (Id.) The ALJ found the psychological review of Dr. Dennis to be not persuasive because it was "internally inconsistent and appears to support more than moderate limitations." (Id.) However, the ALJ found the psychological review of Dr. Payne-Gair to be persuasive because it was "consistent with and supported by the evidence as a whole." (R. 27.) Finally, the ALJ found Dr. Samuel Chung's opinion "neither supported nor persuasive." (R. 28.) The ALJ explained that:

[T]he undersigned finds the limitations ascribed are generally not supported by the evidence of record. Dr. Chung concluded the claimant is not able to perform daily activities independently, prepare food and feed himself, etc. There is no evidence to support this level of limitations. The claimant's function report shows he prepares meals, drives, shops, goes fishing, and does yard work. The medical records show the claimant helps his grandmother and stepfather, performs odd jobs, cleans up after storms, etc. Dr. Chung opined [t]he claimant cannot sort, handle, or use paper files; however, the claimant had normal strength in both hands during the consultative examination. He opined the claimant cannot walk without an assistive device; however, there is no longitudinal evidence to support this limitation. Furthermore, there were no examination findings provided by Dr. Chung to support the extreme limitations.

(R. 27-28.) (internal citations omitted). After considering all evidence, the ALJ concluded that Harris "is capable of sustaining work activity on a regular and continuing basis within the restrictions and limitations contained within the residual functional capacity assessment." (R. 28.)

At step four, the ALJ found that Harris was unable to perform any past relevant work. (Id.) In making this finding, the ALJ relied on the testimony of a vocational expert who stated, "an individual with the restrictions and limitations contained in the determined residual functional capacity assessment would be unable to perform the claimant's past relevant work." (R. 28.)

Finally, at step five, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that the claimant can perform." (R. 29.) The vocational expert testified that, considering Harris's age, education, RFC, and work experience, Harris would be able to perform the requirements of representative occupations such as "production assembler," "hand packager," and "production laborer." (Id.) As a result, the ALJ found that Harris was "not disabled." (Id.)

On November 10, 2020, the ALJ issued a decision detailing the findings summarized above. The Appeals Council denied Harris's request for review. (R. 1.) Harris now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Harris primarily argues that the ALJ did not afford Dr. Chung's examination the correct weight under the regulations and that the ALJ improperly granted weight to opinions of non-examining reviewing experts.

## II.  ANALYSIS

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide

questions of credibility. <u>Ulman v. Comm'r of Soc. Sec.</u>, 693 F.3d 709, 713 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 528 (6th Cir. 1997); <u>Crum v. Sullivan</u>, 921 F.2d 642, 644 (6th Cir. 1990).

## B.   The Five-Step Analysis

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On

-13-

the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

## C.   Medical Opinion Evidence

Harris argues that the ALJ did not follow applicable regulations when determining his RFC and that the ALJ's RFC determination was not supported by substantial evidence. Because both arguments involve the ALJ's consideration of medical opinion evidence, the undersigned addresses them together.

As a preliminary matter, because Harris filed his application for benefits after March 27, 2017, the ALJ was required to adhere to 20 C.F.R. § 404.1520c in considering medical opinions and prior administrative medical findings in the record. See Jones v.

-14-

Berryhill, 392 F. Supp. 3d 831, 839 (E.D. Tenn. 2019). For claims
filed before March 27, 2017, 20 C.F.R. § 404.1527 governs the
evaluation of medical opinion evidence. The distinction is
meaningful because the revisions to the regulatory language
"eliminate the 'physician hierarchy,' deference to specific
medical opinions, and assigning 'weight' to a medical opinion."
Lester v. Saul, No. 5:20CV1364, 2020 WL 8093313, at *10 (N.D. Ohio,
Dec. 11, 2020), report and recommendation adopted by, 2021 WL
119287 (N.D. Ohio Jan. 13, 2021) (quoting Ryan L.F. v. Comm'r of
Soc. Sec., No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore.
Dec. 2, 2019)). In other words, claims filed on or after March 27,
2017, which fall under 20 C.F.R. § 404.1520c, are not subject to
the "treating physician rule." Jones, 392 F. Supp. 3d at 839.

    Much of Harris's argument rests on precedent and cases decided
under the old framework of strictly defined, hierarchical
deference depending on the source of the medical opinion. (See ECF
No. 16 at 12-15.) Many of Harris's arguments lack merit because
although he references § 404.1520c, he bases his arguments on
standards set forth in § 404.1527 and cites exclusively to cases
dealing with the evaluation of medical opinion evidence under the
prior regulatory language. For example, Harris states that "the
ALJ ignored all or parts of examining medical opinions and gave
weight only to DDS forms," (id. at 15), argues that the ALJ should
have "assign[ed] most weight to Dr. Keown's opinion for no carrying

and maybe sedentary work . . . and Dr. Chung's opinions for less than sedentary work[,]" (id. at 14.) and claims that "the ALJ must assign and explain the weight afforded medical opinions in the record." (id. at 13). Harris also asserts that "[t]he Regulation requires that all medical opinions will be weighed, regardless of source" and that "failure to do so is error requiring reversal." (Id. at 13.) The changed approach contained in 20 CFR § 404.1520c, Harris argues, is a "dilution of the [articulation] requirements" for weighing medical opinion evidence. (Id.)

This court has routinely rejected identical arguments regarding the new regulations. See, e.g., Lee v. Comm'r Soc. Sec., No. 1:20-cv-01175-JAY, at *8 (W.D. Tenn. Feb. 17, 2022)(York, M.J.); Hammond v. Comm'r Soc. Sec., No. 20-1158-TMP, 2021 WL 4486366, at *7 (W.D. Tenn. Sept. 30, 2021)(Pham, M.J.); Hart v. Comm'r Soc. Sec., 1:20-cv-01126-ATC, at * 18-19 (W.D. Tenn. Sept. 21, 2021)(Christoff, M.J.); Strawn v. Comm'r of Soc. Sec., No. 20-cv-1065-TMP, 2021 WL 3487176, at *9-10 (W.D. Tenn. Aug. 9, 2021)(Pham, M.J.). The changes contained in 20 C.F.R. § 404.1520c do not represent the "dilution" of a previous standard, but instead a wholly reoriented approach towards medical opinion evidence. 20 C.F.R. § 404.1520c(a) states, "[w]e will not defer or give *any* specific evidentiary weight, including controlling weight, to *any* medical opinion{s} or prior administrative medical finding(s), including those from your medical sources." (emphasis added).

-16-

Instead, ALJs now "articulate [their] determination or decision [of] how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings" in the record. Id. Persuasiveness is judged based on the consideration of a medical opinion's supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. § 404.1520(b)-(c). Other factors that may be considered include the opinion source's familiarity with the other evidence in the claim, and experience with program policy and requirements. Id. The ALJ is only required to explain "how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in order to comply with the regulation. 20 C.F.R. § 404.1520(b)(2); see also Strawn, 2021 WL 3487176, at *10 ("Accordingly, the ALJ was not obligated to show greater deference to the opinions of the treating sources than those of the consultative and non-examining sources. Rather, the ALJ needed only consider the persuasiveness of each opinion.") (internal citations omitted).

Here, the ALJ followed the law. The ALJ explained that Dr. Chung's opinion was "not persuasive," because "the limitations ascribed are generally not supported by the evidence of record." (R. 27.) For example, Dr. Chung found that Harris was "not able to perform daily activities independently, prepare food and feed himself, etc." (Id.) However, Harris's own function report stated

that he could "prepare[] meals, drive[], shop[], go[] fishing, and do[] yard work." (Id.) Further, Dr. Chung found that Harris "cannot walk without an assistive device," but the ALJ found there is no medical evidence or examination findings that support that limitation. (Id.) Additionally, no other medical opinion in the record corroborated Dr. Chung's findings. For example, Dr. Keown, who also personally examined Harris, found "there was no indication of a cane being used during the [consultative examination.]"(R. 20.)

The ALJ explained the persuasiveness of each medical opinion. The ALJ found that Dr. Keown's opinion was persuasive, except for the fact that she did not "assess limitations involving reaching and she did not provide limitations addressing the claimant's capacity for postural activities and environmental restrictions." (R. 26.) The opinion of Dr. Thompson was found to be more persuasive than that of Dr. Whiteman because it was "more consistent with the evidence as a whole." (Id.) The ALJ found Dr. Wilson's "paragraph B" criteria to be an "overestimate of the claimant's mental limitations," but otherwise found his opinion to be persuasive in "showing the claimant has no marked or extreme mental limitations." (Id.) The ALJ found Dr. Dennis's opinion not persuasive because it was "internally inconsistent." (R. 27.) However, the ALJ found Dr. Payne-Gair's assessment to be "consistent with and supported by evidence as a whole," and thus

-18-

was persuasive. (Id.) For every medical opinion, the ALJ properly followed the regulatory procedures, and was well within his role in finding other opinions more persuasive than Dr. Chung's.

Harris makes a more specific argument regarding the opinions of Drs. Thompson, Whiteman, Dennis, and Payne-Gair, who served as the State agency's medical consultants and conducted an administrative review of Harris's file. (Id.) Harris contends that it is error give weight to these opinions because "DDS Agency Reviewers . . . are often unqualified and make millions apparently signing off on reports of non-medical agency sources."(ECF No. 16 at 16.) Harris alleges that these opinions are functionally worthless because the reviewers have "poor qualifications" and spend "unacceptably minimal time" on their reviews. (Id.) In support of these allegations, Harris provides and summarizes a recent *Tennessean* article focusing on administrative contractors. (Id., ECF No. 16-1.) This court has previously considered this exact same argument, involving the same article in several cases. See, e.g., Fuller v. Comm'r Soc. Sec., 1:20-cv-01051-ATC, at *14 (W.D. Tenn. Sept. 30, 2021) (Christoff, M.J.); Hammond, 2021 WL 4486366 at *8 (Pham, M.J.); Hart, 1:20-cv-01126-ATC, at *12-13 (Christoff, M.J.); Lucy v. Saul, No. 19-1083-TMP, 2020 WL 1318803, at *7 (W.D. Tenn. Mar. 20, 2020)(Pham, M.J.). In Lucy, the court said the following:

> This court has an extremely limited role in the Social Security disability determination process: to evaluate whether the ALJ's decision was supported by substantial evidence and whether the ALJ used the correct legal criteria to make his or her decision. See, e.g., Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018). It is not free to restructure the disability determination process to suit its policy preferences. Similarly, the court generally cannot consider evidence outside of the administrative record, such as newspaper articles. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 839 (6th Cir. 2016). Under governing regulations, "an ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on opinions from other sources." Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 274 (6th Cir. 2015). Governing regulations also permit ALJ's to consider program knowledge. 20 C.F.R. § 404.1527(c)(6). Lucy's objection is not supported by law.

Lucy, 2020 WL 1318803, at *7. Harris makes identical arguments, and the court's prior analysis adequately addresses Harris's claims as well. The court is unable to consider these claims in our review. It also should be noted that the ALJ only found two of the four administrative reviewers' opinions to be persuasive. Regardless, the record makes clear that the ALJ's review went beyond the state consultants' administrative findings because he also considered the evaluations of Drs. Chung, Keown, and Whiteman. (R. 24-25.) Because the ALJ explained his supportability and consistency findings regarding all of these medical opinions, Harris's argument that the ALJ "ignored all or parts of examining medical opinions and gave weight only to DDS forms" fails. (ECF No. 16 at 15.)

Harris also argues that the ALJ's opinion is not supported by substantial evidence. First, Harris argues that the opinions of Drs. Whiteman, Thompson, Dennis, and Payne-Gair cannot be "substantial evidence," seemingly as a matter of law. (ECF No. 16 at 17.) ("Richardson clearly holds that to be substantial evidence, opinions must at least be from examiners, and we urge within the reporter's area of expertise.") The ALJ's decision here was based on more than just the administrative reviewers' assessments, as discussed above. But even were it not so, Harris's wider proposition overreads Richardson far beyond its pages. Richardson itself contemplated the use of "medical adviser[s]" to provide evidence, even those who had not examined the patient but nonetheless examined their records and gave an opinion as to their condition. See Richardson, 402 U.S. at 408. Further, federal regulations require ALJs to evaluate administrative medical evidence "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1). As a matter of law, these opinions must at least be considered. Where the ALJ finds them substantiated and consistent, they are within their role in finding them persuasive as well.

Lastly, Harris functionally asks the court to reweigh the evidence and credit the opinion of Dr. Chung more than the ALJ

did. (ECF No. 16 at 19) ("The only medical opinion entitled to weight expresses the reasonable limitation to less than sedentary work on a sustained basis."). The court cannot. <u>Blakely</u>, 581 F.3d at 406 ("the substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts") (citing <u>Mullen v. Bowen</u>, 800 F.2d 535, 545 (6th Cir. 1986)). The undersigned finds that the ALJ adhered to the regulations in considering medical opinion evidence, and that the record provides substantial evidence to support the ALJ's decision.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

May 13, 2022
Date